Hello!   3D pen 3D pen     3D pen 3D pen 3D pen 3D pen 3D pen 5. Flooring 5. Flooring 6. Flooring      6. Flooring 6. Flooring 6. Flooring 6. Flooring Cue Appeal of the Federal Rules of Evidence 404-B. Before the trial, the defendant brought a motion in limine seeking to preclude this very evidence. The defendant argued that... ...against the city. ...but no statement of an issue that appears to go to the officers themselves for excessive force. Judge Cook, I think, said exactly that. He said that the prior uses of tasers in the field could be used to prove not only a Monell claim, but also to show absence of mistake in terms of the excessive force claim. And I think he... What exactly now? There are two videos, is that it? Actually... ...the excessive force claim that even though this statement of the issue makes it a little unclear what it is you're complaining about to me, assuming that you're complaining about the excessive force claim, you've got two videos, as I understand it, that you would have liked to have had admitted? Yes. One of them was a video of Officer Moore? Right, one of the defendants in this case. And then the other was by some other officer? It was a different officer, but it was an in-jail, in-custody situation where a taser was deployed. Are those videos anything like, close to, proving anything about this kind of tasering? I mean, the in-jail problem, what is it that you're trying to show here? Well, I'm trying to show that the officer deploys his taser whenever a citizen, suspect, what have you, does not follow his order. And that's what happened in the in-jail house situation. The suspect is apparently talking to another officer and apparently not following instructions. And Officer Moore just walks over to him, appears into the video screen, and tasers the individual. And what happened in our case is Mr. Eldridge, because he was suffering from diabetic hypoglycemia, could not understand, or even if he could understand, couldn't comply with the officer's command, and so the officer tasered him several times. Well, he wouldn't get out of the car, right? He did not get out of the car. And he was tasered, you know, he was grabbing a hold of the steering wheel, trying to avoid getting out of the car. That was after he was tasered, yes. After he was tasered? I believe it was after he was tasered. He was tasered as he was being gotten out of the car. He was, yes. Well, that would have been the point at which he was clutching the steering wheel as opposed to getting out, was it? I'm sorry, I didn't follow that. I thought there was a period of time during which the officers requested that he leave the car. Oh, that's true. And he just sat there clutching the steering wheel. No, I don't think that that's accurate. I think if you review the videotape, you'll see he's just sitting there. And the car has been disabled because the officer took the keys out. And this court's prior opinion said that someone who is passively resistive and just not following a verbal command, that the use of a taser in that instance would be unconstitutional. So you're saying that he was in the car and not resisting the officers and they tasered him? Because he did not get out of the vehicle. As they were getting him out of the vehicle, right? So he wasn't just sitting there passively. It was at the point at which he was not cooperating in their removal.  Because the audio was, if you don't get out of the car, you're going to get tasered. And I think that command... He got out of the car and he was not resisting, and they tasered him anyway just for the devil of it? Well, there was passive resistance. He didn't follow their command. And I mean, I think that's why he was tasered, because he did not follow their command that he get out of the vehicle. And that's why I think the other videos are highly probative of our excessive force claim. Because what you have is... I'm sorry. I'm sorry. I just found... I knew that I had... The idea I had is that Judge Cook says in his order, it appears he's tasered as he's pulled forcibly from the car. But then he says, although it is not clear. So Judge Cook concedes that there is some lack of clarity in the tape. I think that's a fair statement. And defense counsel made the argument that was advantageous to their point that he was pulled. You made the argument that was advantageous to their point. I certainly tried, Your Honor. I certainly tried. But I mean, this evidence is, as Judge Cook noted in his thoughtful opinion, is critical to proving a civil rights violation under 1983. I mean, if you consider the jury instructions that were given, how can we prove absence of mistake in the absence of this very compelling evidence? And Judge Cook made the right ruling in his original ruling. And then when he retired and the case was ultimately reassigned to Judge Roberts, she actually agreed with Judge Cook and said, you know, he looked at it. I don't think his ruling is clearly erroneous. And then in the middle of the trial, she says, I want to look at the tape again. And you can't use it. And you can't even ask your expert about it. You can't ask the officer if he's ever been in a situation before where someone didn't follow a directive from one of the officers and then was just tasered. And it, of course, goes to notice to the city. The city knew about this. I think, as I know, defense counsel admitted during oral argument, Mr. Kyle got a couple of these videos off of the news. Under the rule that this shows motive, plan, or absence of mistake that the video does? Yes. Explain that. How does it do that? Because the officer's modus operandi is if you don't do what I tell you to, you get tasered. And that is inconsistent. Character problem, doesn't it? I mean, it's not a mistake. It's just you're looking at this in order to show the character or disposition of the officer as always to use a taser? No. What I'm saying is he used an unconstitutional method and he doesn't, he wasn't mistaken in this case in saying, you know, he's not getting out of the car because he's sick or he's not getting out of the car because he's defying, he's consciously defying our order. With this officer, it doesn't make a difference. If he tells you to stand on one foot, you better stand on one foot or you're going to get tasered. There's one incident involving the particular officer in question and one incident involving somebody else that you claim would go against the city? Yes. Just so we're on the same page, Your Honor, with respect to the officer, of course we played the tape of the incident involving the plaintiff, Ralph Eldridge. In addition to that, there were two other videos, one involving the officer and one not involving the officer. Had the other tape, the tape not involving the officer, been admitted along with the tape involving this case? Are you contending that's sufficient to show a custom or policy on the part of the city or failure to train or what? Or do you have to have all three and is that enough? I mean, what's the contention here? Can you prove the custom or policy that way? I can prove at least excessive force using those three videos. Now, in addition— But the video not involving the officer can't be relevant to excessive force as to the defendant officer. But it goes to a policy as to excessive force by these officers. The other two actually involve the officer. So, I mean, I think they prove that he didn't taser Mr. Eldridge because he mistakenly believed that there was some danger or he mistakenly misperceived any of the facts leading up to the tasering. Is there a charge to the liability against the municipality that specific incidents show the custom or policy and you don't rely on anything relating to the municipality itself like training materials or training instructors or anything like that? Well— Just these disparate incidents? No, we introduced a general order regarding the use of force and the use of tasers. And I asked that— It permits that according to the testimony in depositions and at trial. And in addition to something we haven't discussed are the incident reports and the non-lethal force reports, all of which were excluded. And those non-lethal force reports and incident reports combined with the general policy and my expert's testimony and these specific instances can definitely prove a policy. I mean, their own policy, I think their own expert testified— So you're not relying on these exclusively? The tapes, I am not relying on them exclusively. That's really what I was trying to— Okay. I didn't mean to make you waste time on all the others. I don't think I've wasted any time. At least I hope not. But, I mean, so there's several categories of evidence, all of which Judge Cook said were admissible. And then Judge Roberts said again, because when they got a new judge, they said, hey, let's try it again and word it a little differently. So they brought the same—essentially— You seem to have admitted the non-video reports which were made available to you or given to you. Yeah. Did you at some point seek to have those reports admitted in the jury trial? I did. And Judge—well, actually what happened was the judge said that when she made her ruling that none of that was admissible. Because I asked her, I said, well, can we talk about the incident reports? And that's on the record. And she said no. And I asked her, could I ask my expert about videos he had viewed and the incident reports that he had reviewed in compiling his opinion? And she told me no. And I literally had to go out in the hall and conference with my expert because I had met with him that morning and previously, and he was under the impression that all of this evidence was coming in. So Judge Roberts did not find that the facts were different than were made at the proffer. And she just said this is—she changed her mind essentially and overruled Judge Cook's previous ruling and her own previous ruling that all of this evidence was admissible on all of these issues. I think my time is up. How do you pronounce it? Kavanaugh. Good morning, Your Honors. Megan Kavanaugh on behalf of the defendants, City of Warren, and the officers. There are a number of points raised that I want to clarify some of the answers to. Most, I guess working backwards, most recently, the did plaintiff offer or attempt to offer other evidence, including these use of force reports, and he contends that he did and that Judge Roberts didn't let him. And that's not entirely accurate. What he asked Judge Roberts and what Judge Roberts said he could not offer was the incident report or asked his expert about this video, this specific video, situation with Officer Moore in the jailhouse, the unrelated incident. He was the one incident report. Right. He had been permitted under Judge Cook's prior ruling, which Judge Roberts affirmed, that he could offer, at one point it was 28 use of force reports of other taser incidents. I think by the time the trial got narrowed down to eight that he was going to. He was, none of those others were offered into evidence or attempted to offer into evidence, nor were they, nor was his expert asked about these other incidents. Here to us that he offered all of these reports into evidence in the jury trial, your response is that he did not. Absolutely. The only thing he offered was the incident report in respect to one incident of using a taser. Correct. I think we both quoted in our brief the discussion with Judge Roberts after she had viewed this video, and that's another point to mention. There were, as Mr. Kyle indicated, two videos. The only video that was ever shown to Judge Roberts was the video involving Officer Moore in the jailhouse. So the other video I think was obtained, he was in possession of it, absolutely. It was provided by defendant. It was never offered into evidence or attempted to offer and rejected by Judge Roberts. So I don't see how that second video has any relevance. You say he has the same problem on the second video as he did on all the incident reports other than the one. Correct, correct. The one video that he showed, and obviously as we pointed out in our brief, and I think as I've tried to do in my brief, is sort of painstakingly go through the record of what was submitted to the judge. I've never seen a case tried quite this way in chambers and here and there. Usually you have a trial, and the lawyer offers something, and there's a ruling, and it's clear. Thanks, Rue. And I think that that is telling because, again, we're talking about, and I think that the record is clear that the point of trying to introduce the video with respect to Officer Moore was, and the record, it was offered to prove municipal liability. The jury found that the officers did not use excessive force, and by the instructions in the verdict form they could not, therefore, have imposed liability on the city given the verdict as to the officers. So at best, and whether or not, I don't think he has preserved it, but at best he would have to show that this failure to introduce the video would have changed the result as to the officers. And it's one video involving the officer, one of the defendant officers, that clearly was improper evidence. Exactly. According to your view, because I haven't seen the camera, show with respect to when the man was tasered in connection, because I understand what happened was he was having a kind of diabetic blackout, and he drove across a lot of yards and into the wrong place, and the officers were called and they came and tried to get him to leave the car. But in that process, exactly when was it that the taser took place? Based on the video, and I want to say it almost, and I don't mean to be glib, I don't think it necessarily matters also what the video showed, because there was a stipulation of fact that was repeatedly instructed to the jury on this that said, and I quote, the defendant officers attempted to pull plaintiff out of the vehicle. However, plaintiff held onto the steering wheel, would not let it go, and would not get out of his vehicle. That was a stipulated fact that was shown. So that was, as they are trying to pull him out of the vehicle, he is holding onto it. It doesn't make sense that if he was out of the vehicle and tased, that he could somehow have been holding onto the steering wheel. And I think it's also, I realize it was in the dissent, but Judge Norris, in the initial appeal on the qualified immunity issue, if you look at his dissent, his review of the vehicle shows it's clear that he was holding onto the steering wheel as they're attempting, at first verbally, come on out, come on out, you know, what's the problem, get on out, you know, do I need to tase you, this sort of thing, and they attempt to pull him physically from the vehicle, and are being physically resisted, as Judge Norris, as the video clearly shows that. And the taser is as they are trying to pull him out of the vehicle, I believe that that, honestly and candidly, is what the video shows. But I think that that is also, and consistent with that, is that was what was stipulated to, is that is what the video shows. What did it stipulate to? Well, that he was actively resisting. They didn't show exactly when. No, no, other than they attempted to pull him out of the vehicle, and that he was held on, would not let go, and would not get out. But what it stipulated to was that he was actively resisting the officer's attempts to physically remove him from the car. The video that was sought to be introduced was not a video, anything like that situation, but one that was taking place in the jailhouse with Officer Moore, is that right? Correct, correct, and a couple things with respect to that. You say the two are so dissimilar that the one is irrelevant as to the other. Right, and I think that, as we've pointed out, the other sort of layer to this, or twist to this, is that while plaintiff's theory was that the city had an unconstitutional policy or practice of failing to train their officers to recognize the need, or to recognize a medical emergency and not use force in response to that, was also just the, his other theory was, as he said, that they just use this, tases anybody who verbally refuses, and that that passive resistance or just verbal resistance isn't sufficient to warrant use of force. If the verdict by the jury as to the officers is valid, then independently you can't have a claim against them. Right, you can't get to the city. Also, I think the jury was never instructed on this other theory, nor were they permitted to, on the verdict form, find liability for failing to train of the use of taser in the face of passive resistance. They were specifically instructed in the jury instructions as well as the verdict form that the city's liability, should they ever reach it, which they didn't have to, was with respect to recognizing a medical emergency. And clearly these videos, I mean there's no dispute, this one video or even the second one, involved a failure to recognize it as a medical, they didn't involve a medical emergency, or a medical situation whatsoever. And that goes, again, also to this mistake argument, as we've argued out, that it was admissible to prove mistake. This wasn't an incident of mistake. Initially, to make an arrest and no knowledge of the medical condition existed, and that all came about as a result when he was on the ground and they found the pump, then they asked him about it, and then he, I guess, explained his diabetic problem, and then they took him home, right? They alerted EMS and they got him medical attention, and in fact, as I think Judge Morris, or Norris, I'm sorry, pointed out in the dissent, had they not done anything, as trying to get him out of the car or use any of that, it would have been a much more dangerous situation for Mr. Eldridge. But again, the video, or the evidence, the basis for the new trial here, is the exclusion of this one particular video, the only one that was shown. It was involved the officer. You can't get to municipal liability given the verdict against the officers. And again, this modus operandi is new. The bottom line is whether this one video of Officer Moore using a taser in the jailhouse situation is admissible, whether it was error to exclude it from evidence. That's what it comes down to. Well, it does, and as we've argued, that even assuming sort of all the wheels fall off, even assuming that this video should have come in, that that video, even coupled with the subject video, would not have been sufficient to impose municipal liability to establish deliberate indifference on the part of the city, again, because if there was and there hasn't been an argument made that, you know, because this video was excluded, I abandon ship on all my municipal evidence. What did Judge Roberts say the video was not admissible? I'm sorry? Exactly what did Judge Roberts say in explaining why the video that was excluded of Officer Moore was not admissible? She ruled that it was not admissible under 403B and making that in conjunction with 404B, that it's prior acts evidence against this officer. There is no sort of permissible purpose for it to be used. And that decision, again, didn't preclude the other municipal evidence or the other evidence of a municipal policy, which he was permitted to introduce as evidence, but which never did. So at the minimum, at least an offer of proof or something would have needed to have been made to show that, you know, look, I put in seven other instance reports. The exclusion of this video really would have tipped the scales. You and Brother Counsel there just got a dispute about whether he offered it or not. He says he did. You say he didn't. I think the record supports my position that it wasn't offered. And it was clear that the video wasn't shown to Judge Cook in his initial decision. The video wasn't viewed, the actual video itself, until Judge Roberts viewed it in the middle of trial. I understand that trial counsel had been discussing and were aware of the existence of two videos. I think both of them, or at least the other one, was made available via the news. I mean, their existence wasn't secret, but it certainly wasn't offered as evidence. And I think unless the district court was given the opportunity to view it and make a decision on it, I don't think that you can claim appellate error for refusing to get a new trial on new evidence that was never offered to the district court in the first place. Any other questions? Thank you. Mr. Kyle. I think Judge Merritt is right. We have a dispute, and you have to look at the record. I would refer you to page 17 of my brief where I think the colloquy is fairly well quoted. The statement that the video was not viewed, I don't know how counsel could know that. I mean, Judge Cook deliberated over it and issued a written... Judge Cook was not the judge who presided over the trial in this case. That's correct. He was the first... What matters is what the jury had before it. I agree. I agree. Was it before the jury? I'm sorry? Was it before the jury? No. The video of the encounter... I'm not talking about the excluded evidence. Okay. I don't want to jump guns in the middle of the... or shifted subjects. My mind may have been faster than the question was going. That's okay. I wanted to know about the incident reports. The incident reports were not admitted, so the jury never saw the incident reports. And many of the incident reports make reference to dash cam videos, and that was really the way we were... Where exactly in the record do you say you offered the incident reports and the evidence? That's... Where is it that we're going to resolve this conflict of fact? You say you offered them. She says you did not. Right. Where is it you say you offered them? It's in the trial proceedings where she makes the ruling that counsel quoted from excluding the evidence. Where is that? Do you have a page number or anything? It's a crucial situation here. I don't... I've never quite seen where the lawyer... Let me see if I can... give me two seconds. It would be the trial transcript of April 28, 2015, which is record number 92, and the page... I don't have the page ID number. Actually, I think it's... Counsel, do you have a page number? I do. I have it as page ID 1000-1001. Okay. Okay. And unless there are any other questions, that's all I have. Okay. Thank you. Thank you both for your argument. We will consider the case carefully. Thank you, Judge. Thank you.